The Fair Debt Collection Practices Act gives consumers the right to dispute the debt. In this appeal, the defendant debt collector invites this court to limit that right by establishing a fair debt collection practice. what it calls an inherent writing requirement. But that request is not based on the statute's text, but instead on an open appeal to what the debt collector calls public policy and the spirit of the FDCPA. That's a quotation from page 7 of the defendant's brief. This court should reject that invitation for three reasons. First, the text compels it. Second, allowing oral disputes is neither absurd nor incoherent, as the First, Second, and Ninth Circuits have all recognized. And third, even if the defendant's approach were good policy, and we don't believe it is, that would be the legislature's job or policymaker's job, not this court's job. So I'd like to start, if I may, with the text of the statute and walk you through it, because I think the text is not ambiguous, and we don't read the defendants to be contending otherwise. And so under those circumstances, the text ought to be the starting point and the ending point of the analysis. This is a statute that extensively and in detail regulates both oral and written communication and includes a default rule that communications, unless specified otherwise, are made, quote, through any medium. And throughout the text of the statute, but particularly in Section 1692G, which is the relevant provision here, Congress, we think advisedly and knowingly, distinguished between disputes made in writing and disputes more generally. And disputes more generally, in conjunction with the default rule, should be read to mean oral disputes or written disputes. And the distinction carries over to other provisions of the Act as well. So there's a provision, for example, a very important provision, that says that debt collectors may not report a debt to a third party, for example, a credit bureau, and fail to indicate the fact that a debt is disputed. That's Section 1692E8 of the Act. And the First Circuit has addressed this directly in the Brady case and held that when a consumer makes an oral dispute, that is a dispute within the meaning of that provision. And it's a violation of the Act for a debt collector to report the debt to a credit bureau and fail to indicate the fact that it's been disputed. It doesn't matter whether it's been disputed orally or it's been disputed by letter. In the Brady case, I think those facts are relevant here, the consumer called up the debt collector and said, I dispute this debt. It was a dispute over a lease. And the consumer hadn't even signed the lease. So he was clearly not someone that they should have been collecting from. And the debt collector ignored that dispute and said, you should send us a letter. The consumer didn't send a letter, at least in time. And the debt collector reported the debt to third parties, to credit bureaus. That's a direct violation of the statutory provision, which says nothing about whether the dispute is made in writing. So the point is, oral disputes have meaningful protections that come with them. At the same time, the statute sets up a bifurcated scheme, as the Second Circuit has most recently explained. It's a bifurcated scheme where, for certain protections, you make an oral dispute, and you get protections like the kind I mentioned about reporting to credit bureaus, or, for example, allocations to multiple debts. If you've got multiple debts, some of which are disputed and some of which are not, the statute prohibits debt collectors from allocating payments to the disputed debts. And again, that provision doesn't reference an in-writing dispute. At the same time, though, the statute does contain a writing requirement in other provisions. And what it says is, if you want the sort of ultimate power that a consumer has under the statute, which is to stop all collection activity during a dispute, you've got to do that in writing. If you want verification of the debt in writing, you've got to make a dispute in writing. And as the Second Circuit decision hooks indicates, that makes some sense. There was some parallelism between the obligations of the consumer and the concomitant obligations of the debt collector. So oral disputes trigger some protections, but they don't trigger all the protections. Now, the argument on the other side, I think this is probably the strongest argument on the other side, is that that creates an absurd or incoherent system, because consumers who are advised that they have a right to dispute the debt, but only make an oral dispute, will not be able to avail themselves of protections of disputes made in writing. And that was the gravamen of the Third Circuit's decision in Graziano, a now 20-year-old decision that has not been followed by the majority of the courts and I think has essentially been rejected by three circuits. But that was the reasoning, and I think that's the reasoning that the district court adopted. And wouldn't it be a reasonable interpretation to look at 1692 and Section 3, where it just uses the word dispute, and then you go to 4 and 5, it adds the phrase in writing. Congress could have put in writing in Section 3, couldn't it? It did not put in writing in Section 3. It could have, exactly. And I think you can end the analysis right there. When Congress makes a decision to put certain words in a statutory provision and omit the same words in another statutory provision, we ought to assume that Congress meant what it said and did what it did on purpose. And I think you can stop right there, and I think that is part of the analysis that the Second Circuit and the Ninth Circuit have adopted. I don't think you need to go any further. But what the Third Circuit held and what the district court held here is, basically we acknowledge that the plain language is against us, but we think that reading the statute consistent with the plain meaning of the text would be an absurdity, would be incoherent. Is there any basis for reading it consistent with a consumer's expectations? I think most consumers would be surprised that this is a sliding scale of rights depending on whether or not they disputed orally or in writing. If they disputed that, I think most consumers would hope and expect that they would receive the full protection of the statute. Right, and I think that's in fairness. I think that's part of the concern that the Third Circuit had. And I think the statute addresses this, though, because the statute sets out quite in detail what you have to tell the consumer. You've got to tell them that we're going to assume that this debt is valid unless you dispute the debt. It doesn't say anything about it in writing. And then it says if you make a notification in writing, then you get the verification. Then you get these other additional protections. So your response is that the notice should make that clear? I think the notice should make that clear. I think tracking the language of the statute is sufficiently clear. But certainly nothing precludes my friend here, if they are so concerned about making sure that consumers receive appropriate and clear notice, nothing precludes them from drafting a notice that says, look, you have the right to dispute a debt. You have the right to do it orally or in writing. If you do it orally, the following things will flow from that. If you do it in writing, the following things will flow from that. And I think it's important to note that the industry standard here is the kind of notice that we're suggesting that simply tracks the language of the statute. The American Collectors Association, the main trade association for the debt collection industry, recommends a notice that tracks the language of the statute and does not contain an in writing requirement. And, you know, the Consumer Financial Protection Bureau, the federal agency that now, for the first time under the Dodd-Frank Act, has rule writing authority under this statute. If any agency or institution of the federal government is going to devise, you know, notice that's clearer for consumers, it ought to be the regulatory agency, which can do that through the rule making process. It ought not to be a court, which doesn't have the ability to test, you know, these notices on consumers and see whether they work or don't work. Now, your clients never disputed the debt, so even under whatever reading you want of the statute, there really isn't a claim here, is there? I disagree, Your Honor. I mean, the whole gravamen of the claim is that they were denied this procedural opportunity to make an oral dispute. Now, we can engage in the counterfactual, which is whether they, if they were given the right to make an oral dispute, they would have, in fact, made such a dispute. That's always going to be the case. That was the case in Camacho in the Ninth Circuit and the most recent decision from the Second Circuit in Hooks. In both of those cases also, the consumers did not make oral disputes because they were deprived of the ability to do so. If there are no further questions, I'll reserve it. Thank you. Your Honors, may it please the Court. My name is Sean Partridge. I'm here on behalf of Absolute Collection Service. I have with me Jennifer Maldonado. I must say, first of all, I know it's eating my time, but it's a complete honor to be here. It's also very intimidating, and I'm quite nervous. I hope I'm up to the task. I would say that the issue that's before the Court today is, does Absolute's letter to a debtor that points the debtor in the direction of most protection violate the statute, without waiving any of the rights under any part of the statute? We believe that Graziano v. Harrison was right when it was decided, and we believe it's right today. Plaintiff's interpretation of 15 U.S.C. 1692G is demonstrably at odd with the intent of the statute because it does create a confusing, incoherent statute because it leads to potential loss of consumer rights. What do I mean by that? Well, as counsel pointed out a moment ago, why don't we just now send out a letter that says, unless you dispute the debt orally or in writing, within 30 days, we will assume the debt to be valid. Well, again, first of all, it's supposed to be a consumer protection statute, and it's supposed to provide those protections. The only way you get protections under Section A, A4 and A5, is if you take some act in writing. But now we're encouraging a letter that says you should dispute it orally or in writing. Well, no, I think Mr. Gupta was arguing that you should track the language of the statute. What's wrong with that? The language of the statute doesn't say orally or in writing, Your Honor, and that's why we believe it's one of the reasons why it is confusing because both Mr. Gupta in his brief and in Camacho, in the cases that follow Camacho, don't stick with 1692A for its analysis. They have to go outside 1692A to other sections of the FDCPA, the other sections that don't really have a connection to the disputing the validity of the debt. Isn't the problem here that you want to inject a word in the statute that simply doesn't appear in that section of the statute? No, Your Honor, but as I said before, orally doesn't appear as well. This Section A is one long sentence. Now, my grade school teacher, Sister Mary Robert, would have rapped me on the knuckles tremendously if I ever wrote a sentence this long, but that's what we have. And you can't read Section A from the beginning of the sentence to the end of the sentence without seeing the words writing or in writing two times. And you can't do that in Section B without seeing the words in writing two times. So not saying that they intended to omit it, it's probably superfluous, repetitive. You can't read that sentence without seeing the words in writing two times. There's no explanation. Mr. Gupta points to Brady and the First Circuit. That was really a case about analyzing 1692E8, not GA3. But it also said that there was a different standard that applies. One was in writing and one was not. But I understood Mr. Gupta's argument to be that Congress could have intended a sliding scale of rights depending on how you exercise them. What's wrong with that? Your Honor, I believe it's actually what's contemplated in the statute, that depending on what protection you're trying to invoke, there are different standards to the word dispute. But your notice doesn't alert the consumer of that. Your Honor, our notice alerts the consumer to the safest way to all protection in the statute. If they exercise a protection in writing, they get all the protections not only under GA but also under H and E and C. Whereas if we send a letter out, as Mr. Gupta describes, says you can dispute it orally in writing, what do you think a consumer is going to do? Well, they're going to pick up the phone. The letter says I can dispute this orally. And what's a debt collector going to do? They're going to accept the call. They have no obligation to re-explain the rights in a whole phone call. They hang up and say thank you for the call. They wait for 30 days and the collection starts again. And the consumer has lost those rights. All right. Well, then that's on Congress. Why do you care? Why do I care? Why do you care about that result so long as you follow the letter of the statute? Well, Your Honor, I have to say that I think what my client did, if we're hearing the facts of the case, I don't know how to interpret what Congress did. But they don't waive any under H because a written dispute certainly would automatically trigger an oral dispute under E and H and C, as they said. I also really question, Your Honor, whether, again, the point of this is that there are different standards under this statute. The word dispute, the plaintiffs argue essentially that the letter that we sent out under A, this is a letter required under A. No other part of the statute, H or E or C, require a letter. This letter was never intended to explain all the rights you have under the FDCPA. It's simply required under Section A. And, Your Honor, when it says dispute, since the plaintiffs want to tie this phrase that's required under G.A. to other parts of the statute, does that mean that the 30-day requirement under Section G.A. for a dispute applies to Section H and E and C? Because that's what it says in the letter. And, Your Honor, my interpretation would be no, it does not because that's not what E says. It's not what H says or C says. But those are perfect examples of how this statute was created where there are different standards for dispute depending on what protections the consumer is trying to trigger. And that's what we say. The same analysis applies to H. That's the multiple debts statute. And it says that you can't apply any payments that a debtor sends you to a disputed debt. Well, again, does the 30-day requirement under G, again, a letter required to say that under G.A., does that apply to H? So if we do put this in this letter, then does that dispute, 30-day dispute, apply to H? And they can't even orally dispute it after 30 days. No, that's not what's intended. But nor is it intended that this letter under Section G.A. explain the rights under H or impose under H. As a matter of fact, Your Honor, we're setting up a situation now where there's going to be an immediate overshadowing claim. Because what we're saying is the dispute in Section G.A. 3, when we put this in the letter, that dispute applies, infers the dispute to other statutes, H, E, and C. Well, we have some language that Judge Diaz and I are fairly familiar with. Under the Absurdity Doctrine, the court must follow the statute's plain language, and thus doing so would, quote, lead to a result so gross as to shock the general moral or common sense. Does ignoring the plain meaning rule in this case do that? Your Honor, I would say potentially, but I would also say that there is no plain meaning. Following the plaintiff's brief in this case and Camacho and the cases that follow Camacho, they spend a very long amount of time discussing other parts of the statute. If there is a plain meaning, why do you need to go outside Section A, Section G, excuse me, to go to H and E to understand what G says? More importantly, why are we jumping outside of Section A, 3 to go to G and H and E, if we just got to go down to the next part of the same sentence that talks about what rights you have, what you have to take, the actions you have to take in writing? I mean, I read that as their complementary argument, but their initial argument is the statute says what it says. End of story. It's not absurd. That's the end of it. Well, Your Honor, I believe it does. I believe it has to lead to an absurd result because of, well, it's a possibility. As we just said, Your Honor, if we now can send out a letter that says you can dispute the debt orally in writing, it's encouraging people to dispute the debt orally and leading to a loss of these protections that Section G.A. was designed to prevent. Because, again, now what we're saying is let's send out a letter under G.A. that says unless you dispute the debt orally or in writing, people pick up the phone. And they may not read the rest of the letter that says, well, you have to do this under A, 4 to get this protection. It has to be in writing. They may not read the rest of the letter, or they may read it, but they focus on this one sentence that says, yeah, you can dispute it orally or in writing. And I choose to dispute it orally. They don't realize they're losing these protections. Our letter does not mislead anybody to think they're losing any protections. And that's why we think our letter is appropriate. In terms of statutory interpretation, Your Honors, we think that cases like the holistic approach that was followed in Palisades Collections is one that we follow. Yes, there's a reference to the language itself, and we say the language is not clear. It doesn't say oral. It doesn't say written. It just says dispute. In addition to that, you have to look at the specific context in which the language is used. The context in this matter is this entire sentence in Section G.A. And as I pointed to the Court before, you can't read this sentence without coming across the words writing or in writing at least twice. That's the context. Again, this letter or the context of this letter that was required under G.A. The outline of what was supposed to be in the letter is in G.A. 4 and 5, 3, 4, and 5. So the specific context of the statute is this statute alone. Again, a letter that's never—no other statute requires this letter. And the statute doesn't say in addition to explaining the rights under Section G.A., you have to explain your rights under H and E and C. That's not what's required. Your Honor, the link, the inference is that these letters, the word dispute in A, G.A., is the same dispute. It's not the same standard. Some of them may allow oral dispute. But under H and E, it doesn't have to be within 30 days. That's why A should be read alone. G is G and shouldn't go to H or E. Essentially, you're making a policy argument. Isn't that something that should be left to Congress and not to us? Well, Your Honor, we are here because we can make a statutory interpretation. I believe that they did make an interpretation that we should follow. And the interpretation is under Section G, the standard to get these protections are in writing. Actually, there was a broader interpretation, a broader policy, is depending on what protection you want, you may have to do a different form of dispute. Some require writing. Maybe Congress intended a record for that, and maybe they didn't require a record for the dispute under H or E. But I think the intent under A is pretty clear. And I would say, Your Honor, if we're interpreting the statute and interpreting whether this letter complies with the statute, we should not interpret the statute in such a way that encourages the loss of rights under A4 and A5 if they orally dispute it, whereas our letter does not encourage the loss of any rights under the FDCPA. It doesn't encourage a waiver. It doesn't say you can't dispute it orally. It just simply directs them in a method that they can protect their rights. I would say, Your Honor, also in terms of statutory interpretation, we look at not just the specific context, but I think we have to look at the broader context of the statute as a whole. The broader context is consumer protection. That's it. This statute was designed to give consumers certain rights in this area. I've already said we should not interpret the statute then in a way that could lead to the loss of consumer rights because somebody reads this letter and then orally disputes the letter. I would also say that when we say the loss, I mean, a consumer can, I suppose, make a conscious decision. They don't want to bother with the writing, but they want some protections, and so they make a phone call. Why is that unreasonable? It's not, Your Honor, but it supports our argument that Congress intended there to be different standards for a dispute, for triggering a dispute, depending on which protections you want. Congress decided that they wanted this protection in writing. So, again, there's nothing wrong with having Section 8 say you can have this orally, and it's nothing wrong to say you can have this in 30 and beyond 30 days. But the whole point of this dispute is that your letter doesn't make that clear to this consumer. Well, Your Honor, the letter is not intended to explain all the rights under the statute. The letter was required under Section GA, and that's all it was ever intended to explain. Again, I go back to under H and E and J, it never requires a letter. As a matter of fact, I don't think there is any requirement under H or E or G that a debt collector inform the debtor of those rights under H and E and C like they might have to under G. So this letter, the letter that we're here for today, does not impinge those rights. It doesn't direct them away from those rights. Again, if they do something in writing, then they have those protections. But Your Honor's point was kind of what we said before. What if you have no basis to dispute the validity of the debt, as the clerks never alleged in this complaint, never alleged that they had a basis for it, never alleged that they ever intended to dispute the debt? So the injury question has been raised. But Your Honor, the reason is they may never have a reason to challenge the basis of the validity of the debt. They may never have a reason to challenge the amount of the debt. Or they may never want to know who the original creditor is. But they still may want to exercise these other rights under H and E. And that's why these are not tied together, and that's why our letter is not tied together. Now, Your Honor, the argument has been – I've seen this. I've seen this in Camacho. And the argument is, well, we really have to target the least sophisticated consumer. And sometimes that's the person with the minimal literacy and English skills that may not be able to exercise these rights in writing. Your Honor, I respectfully submit that that is a misinterpretation of the least sophisticated consumer, because there is no dispute under all the circuits that in order to get the protections under A4 and A5, you have to take some act in writing. You must. And therefore, Congress intended that you have to have this as a minimal skill for the least sophisticated consumer. So that's another reason why we believe this analysis is incorrect. Your Honors, in closing, I would say, Your Honor, that – if I may have a moment, please. Plaintiff's interpretation of the statute inevitably leads to the loss of rights. Someone's going to read this letter and believe they can dispute this debt orally, believe that they may be able to get some of these rights under G.A., when in fact they won't. They'll waive them. As a matter of fact, by Mr. Gupta's reference to a letter we can say orally in writing, we are now encouraging some debt collectors to insert the word orally and promote the oral dispute, which promotes the loss of rights. Our letter does not do that. Our letter actually encourages them, points them in the area where they get the most protection. The plaintiff's interpretation of the statute may be good for this litigant, but we believe our interpretation of the statute in our letter is best for consumers in general. If there aren't any further questions, Your Honor. All right. Thank you, Mr. Parker. Thank you. Unless Your Honors have any specific questions for me, I'd like to just make a few points about why we believe that this court should follow the lead of the First, Second, and Ninth Circuits and issue a decision that we think enforces the plain text of the statute. Mr. Partrick said that the plaintiff's interpretation, in his view, is at odds with Congress's intent, and he gave you a lot of reasons about why that might be. We think the place to look for Congress's intent is the text of the statutory provision at issue here. And we think it's clear that that statutory provision could have, as Judge Floyd suggested in questioning, could have included a writing requirement but did not include a writing requirement. And in order to overcome the text of the statute, the defendant really does need to satisfy that very difficult standard for absurdity, which under some formulations means it has a fine common sense. And the classic formulation I really like from the Supreme Court from the 19th century is that it's got to be a formulation that all mankind would recoil if they had that result. And that's certainly not what we have here. I'd like to just say a few words about why I think Congress might have sensibly concluded that the oral dispute right is an important right in this context. As I said in the opening, this is a statute that heavily regulates communication that occurs by telephone. Most collection activity in this country is by telephone. And if you look at Joint Appendix page 11, you'll see a copy of the collection letter in this case. It invites the consumer to call up a toll-free number and pay. So the debt collector is fine with receiving payment by telephone, but what they're saying is we're not fine with receiving disputes by telephone. It makes sense that in a context where a lot of the communication is oral, that consumers would be able to exercise their dispute rights orally. And it's also a statute that's aimed at consumers who are often going to be low-income, less sophisticated consumers who may not be literate, who may not have the wherewithal to prepare a letter in order to exercise and take advantage of the most basic protections under the Act. Or they may be people who are working many jobs and just don't have the time to do that. And this is the kind of thing that Congress may appropriately take into account, but it's the sort of balancing of competing interests that I think is difficult for a court to do. Mr. Partrick says that that's all well and good, but what this ends up doing is resulting in waiver often of rights, a failure of not notifying the consumer that the writing is the best and most effective way to protect all of his or her rights. I mean, we think if you just track the language of the statute, which again is what the Trade Industry Association for the Debt Collection Industry tells people to do, it's the industry standard. If you just do that, you are telling consumers you've got a right to dispute. And if you make that dispute, we won't assume the validity of the debt. But if you want to take advantage of these very important rights, which are to seek verification of the debt, to get the original name of the creditor, you've got to do that in writing. And so if you just track the language of the statute itself, just provide the statutory language in the notice, you are informing consumers of those rights. But I'll just refer to something I said earlier, which is it's possible to imagine drafting a collection notice that makes even clearer than the statute does, that you've got oral rights and written dispute rights, and there are certain protections that flow from both. And so I could imagine a really altruistic debt collector who might do that. I think that's quite unlikely because they want to collect as much as possible and they want to discourage disputes. But I can imagine the regulatory agency drafting a model notice like that that would make it even clearer than the statute does. But we have the statute here, and the statute makes it sufficiently clear. That's why three circuits have held that there's nothing absurd or strange about a statute that has two tiers of dispute rights. And also, I think there's one provision I should have mentioned, which is the last sentence of section 1692G, subsection B, which says that any collection activity may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute. So Congress, and by the way, it doesn't say written right to dispute. So Congress was very clear there that it's a violation of the statute to overshadow or be in any way inconsistent with the disclosure of the consumer's right to dispute. Where do you look to see how that disclosure should be made? You look to the text of the statute that mandates this disclosure. And it doesn't say anything about that the validity right must be made in writing. They've simply added a word to the statute. And there's no reason to do that. They've been on notice that all these circuits and cases around the country, the majority rule is that you may not add in writing requirement. And in fact, this debt collector itself has been saddled with liability in a case involving this very violation. So they're on notice that that's the case. And if they continue to do it under those circumstances, I think it must be that they perceive some collection or business advantage from doing so. That's precisely the sort of thing that the statute is designed to guard against. Thank you. All right. Thank you very much. We'll come down and recount.
judges: Albert Diaz, Henry F. Floyd, Joseph F. Anderson, Jr.